The Honorable Karen A. Overstreet
Chapter 11
Hearing Date: September 22, 2010
Hearing Time: as set by Court order, emergency hearing requested
Hearing Location: 700 Stewart St., 7th Floor Seattle, WA
Response Date: at the hearing

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>THE CASCADIA PROJECT LLC<br>EIN: 20-4188863,<br><br>Debtor. | Case No. 09-20780<br><br>THE CASCADIA PROJECT LLC'S EMERGENCY MOTION TO REIMPOSE THE AUTOMATIC STAY AND FOR DETERMINATION OF DEBTOR'S OBLIGATIONS UNDER<br>11 U.S.C. § 362(d)(3)(B) (SARE) |

The Cascadia Project LLC ("Cascadia"), by and through its attorneys of record Geoffrey Groshong, Daniel A. Brown, and Miller Nash LLP, hereby moves the court, on an emergency basis, for the reimposition of the automatic stay ("Motion"). This Motion is based on the files and records herein and the declaration of Daren Barone ("Barone Dec.") in support of the Motion filed concurrently herewith, and the declarations of Pat McCarthy ("McCarthy Dec.") Kevin Padrick ("Padrick Dec.") filed concurrently herewith.

### I. BACKGROUND

1. Cascadia commenced this case on October 15, 2009 (the "Petition Date"). Cascadia has retained control over its assets, and continues to operate its business pursuant to 11 U.S.C. §§ 1107 and 1108.

2. Cascadia's primary business operation is the development of approximately 4,200 acres of land located near Orting and Bonney Lake, Washington (the

EMERGENCY MOTION FOR THE REIMPOSITION OF THE AUTOMATIC STAY... - 1

SEADOCS:424820.1
552640.0002

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

"Land"), as an employment based planned community (the "Community"), including the planned development of residential, commercial, business and educational properties. Cascadia, through contractors, also conducts timber harvesting on the Land and on adjoining property owned by Cascadia Resort Communities LLC. The Land was originally purchased in 1991 by a wholly-owned subsidiary of a Bahamian corporation owned by a group of Taiwan investors. Cascadia was formed in 1999 as a Washington limited liability company whose sole member and manager is Patrick Kuo. Cascadia took title to the Land in 2006.

3. HomeStreet Bank ("HomeStreet") has claims against Cascadia in the approximate amount of $75,000,000 (seventy-five million dollars). HomeStreet's claims are secured by the Land. The claims are related to two loans made to Cascadia, one in the principal amended amount of $40,000,000 (the "Infrastructure Development Loan") and the other in the principal amount of $36,400,000 (the "Acquisition and Development Loan").

4. On December 11, 2009, the Court gave its oral ruling granting HomeStreet's motion for an order determining that Debtor's real property was single asset real estate and entered a written order on December 18, 2009 [Dkt. #120] (the "SARE Order"), holding that Debtor's real property is "single asset real estate" as defined by 11 U.S.C. § 101(51)(B) and for the purposes of 11 U.S.C. § 362(d)(3).

5. With the filing of the SARE Order, 11 U.S.C. § 362(d)(3) was activated, such that if HomeStreet noted a motion for relief from stay it would be granted, absent one of the following events within 90 days of the order for relief,

"(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

(B) the debtor has commenced monthly payments that

(i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate …" 11 U.S.C. § 362(d)(3).

EMERGENCY MOTION FOR THE REIMPOSITION OF THE
AUTOMATIC STAY… - 2

SEADOCS:424820.1
552640.0002

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

6. On December 23, 2009, the Court set the amount of Cascadia's monthly payment to HomeStreet pursuant to 11 U.S.C.§ 362(d)(3)(B) at $266,057 (the "SARE Payment"). [Dkt. #128].

7. In February 2010, Cascadia commenced payments under 11 U.S.C. §362(d)(3)(B).

8. On June 30, 2010, after a three day trial held on June 22, 23, and 24, 2010, on the HomeStreet's two motions for relief [Dkt. #121 and Dkt. #299], this Court entered its Order on Motions for Relief from the Automatic Stay Filed by HomeStreet Bank [Dkt. #493], denying HomeStreet's motions for relief.

9. On August 5, 2010, the Court entered an agreed order retroactively recalculating payments due under 11 U.S.C. § 362(d)(3)(B) ("SARE Payments") at $240,377.50 and applying an overpayment of $154,307 to the August SARE Payment. [Dkt. # 535]. Cascadia did not make the August SARE Payment to HomeStreet.

10. On August 1, 2010, HomeStreet filed a renewed motion for relief from the automatic stay. [Dkt. # 528]. The hearing on the motion was set on shortened time. [Dkt. # 532]. The Court granted HomeStreet relief from stay on August 6, 2010, but refused to waive the 14-day stay period provided under Rule 4001(a)(3). [Dkt. # 545]. During the Court's oral ruling on August 6, 2010, the Court indicated that Cascadia could move the Court, on an emergency basis and on shortened time, for the reimposition of the automatic stay before HomeStreet's foreclosure sale. The Court stated that it would not be necessary that Cascadia have a plan confirmed in order for the automatic stay to be reimposed, but did state that Cascadia would need to come to Court with more than just the unsupported declaration of Mr. Padrick and would need evidence of financing either witness, declaration or correspondence.

11. HomeStreet has scheduled the sale of Cascadia's personal property for Thursday, September 23, 2010 at 4:00 pm. Additionally, HomeStreet has scheduled the sale of Cascadia's real property for Friday, September 24, at 10:30 a.m. *See* Padrick Dec. ¶ 3.

EMERGENCY MOTION FOR THE REIMPOSITION OF THE
AUTOMATIC STAY… - 3

SEADOCS:424820.1
552640.0002

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

12. Since of the lifting of the automatic stay, Obsidian Finance Group, Yarrow Bay, and Cascadia have continued to work tirelessly to find equity financing to support Cascadia's reorganization. *See* Padrick Dec. ¶3 and ¶4. Financing has now been found. La Jolla Capital Investors, LLC ("LJCI") is willing to commit $17.6 million to fund reorganization efforts. *See* Barone Dec. ¶ 4. Further, Pierce County has stated it intends to take all actions necessary to build the required access into the Community at 198th Street corridor in the approximate amount of $15 million. *See* McCarthy Dec. ¶ 6. This assurance from Pierce County alleviates substantial monetary obligations on the part of reorganized Cascadia for restructuring, and thus ensures that the contemplated $17.6 in equity investment from LJCI adequately funds Cascadia's reorganization efforts and the underlying model supporting the plan. *See* Padrick Dec. ¶ 4 and ¶ 5.

## II. RELIEF REQUESTED

13. Cascadia requests the Court reimpose the automatic stay.

## III. ARGUMENT

14. Cascadia is proceeding under F. R. Civ. P. Rule 60(b) based upon the Court's instructions to seek the reimposition of the automatic stay through an emergency motion. It has been held that a debtor can properly seek the reimposition of the automatic stay through the relief provided under Rule 60(b). *See Ramirez v. Whelan*, 188 B.R. 413, 416 (9th Cir. 1995). Cascadia also recognizes that relief is also available under 11 U.S.C. § 105. *See also In re Rodrquez Camacho*, 361 B.R. 294, 300 (1st Cir. BAP 2007). It has been determined that relief under Section 105 is in essence be a plea for injunctive relief, and thus would require an adversary proceeding under Bankruptcy Rule 7001(7). *Id.* To the extent the Court determines Section 105 applies, the Court may consider this an adversary proceeding and a motion for injunctive relief.

15. Bankruptcy Rule 9024 states that F.R.Civ.P. Rule 60 applies in cases under the Code with the exception of several circumstances not relevant to this action. Under

EMERGENCY MOTION FOR THE REIMPOSITION OF THE
AUTOMATIC STAY… - 4

SEADOCS:424820.1
552640.0002

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

1  F.R.Civ.P. 60(b), "the court may relieve a party…from a final judgment, order, or proceeding
2  for…any reason that justifies relief." F.R.Civ.P. 60(b)(6).

3  16.  The Ninth Circuit has stated that Rule 60(b) "compliments the discretionary power that bankruptcy courts have as courts of equity 'to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders.'" *In re Int'l Fibercom,* 503 F.3d 933, 940 (9th Cir. 2007) (citing *Meyer v. Lenox*, 902 F.2d 737, 740 (9th Cir. 1990) (citing *Chinichian v. Campolongo*, 664 F.2d 1158, 1161 (9th Cir. 1981))). The Ninth Circuit has further stated that "Rule 60(b)(6) should be 'liberally applied'" *Id.* (citing *Yanow v. Weyerhaeuser S.S. Co.*, 274 F.2d 274, 284 (9th Cir. 1958). Rule 60(b)(6), however, should be "utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct erroneous judgment. *Id.* (citing *United States v. Washington,* 394 F.3d 1152, 1157 (9th Cir. 2005). A party moving for such relief "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with…the action in a proper fashion." *Community Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002). A bankruptcy court's grant of relief from an order under F.R.Civ.P. 60(b) is reviewed for abuse of discretion. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

17.  Here, extraordinary circumstances exist warranting relief under Rule 60(b)(6). Further, Cascadia can demonstrate both injury and circumstances beyond its control preventing it from proceeding with this action until now. Extraordinary circumstances have prevented Cascadia from seeking the reimposition of the automatic stay until now. Although Obsidian, Yarrow Bay, and Cascadia have been working tirelessly to find equity to finance reorganization, it was not until the afternoon of September 21, 2010, that LJCI committed to making the investment required to fund Cascadia's reorganization. *See* Padrick Dec. ¶ 4. It was not until the afternoon of September 21, 2010, that Pierce County was able to make the needed assurances for the funding of the 198th Street Corridor. *See* Padrick Dec. ¶ 4.

EMERGENCY MOTION FOR THE REIMPOSITION OF THE
AUTOMATIC STAY… - 5

SEADOCS:424820.1
552640.0002

**MILLER NASH** LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

18. Cascadia is presenting this Motion in a manner consistent with the Court's instructions. The Court stated that Cascadia could move the Court for reimposition of the automatic stay if Cascadia could secure funding and present evidence of such funding before the Court. As evidenced by the declarations of Daren Barone and Pat McCarthy a deal is now on the table and Cascadia's reorganization efforts are alive and well. Under the plan, LJCI will invest $17.6 million into Cascadia's reorganization. *See* Barone Dec. ¶ 4. Additionally, Pierce County will ultimatley fund the construction of the 198th Street corridor in the approximate amount of $15 million. *See* McCarthy Dec. ¶ 6. The plan calls for a 25 year amortization of HomeStreet's secured claim of approximately $55 with a balloon at the end of the 7th year. *See* Barone Dec. ¶ 5. HomeStreet's secured claim will accrue interest at the rate of prime plus 1% fully floating. *See* Barone Dec. ¶ 5. HomeStreet's unsecured claim will be paid in 300 equal monthly payments without interest. *See* Barone Dec. ¶ 5. Unsecured creditors will receive equal quarterly payments over 5 years, beginning in the second year after the plan's effective date, in the amount of their approved claims. *See* Barone Dec. ¶ 5. Accordingly, the automatic stay should be reimposed as Cascadia has found the necessary equity funding to support the above described plan and has presented to the Court sworn statements evidencing such funding commitments.

19. Cascadia further requests that the Court determine its obligations under 11 U.S.C. § 362(d)(3)(B). Pursuant to 11 U.S.C. § 362(d)(3), the court may grant relief if a single asset real estate debtor fails to file a plan of reorganization within 90 days of filing its petition for relief or if the SARE debtor fails to commence monthly payments within 30 days after the court determines the debtor is holding single asset real estate. As such, the only purpose of the debtor tendering a SARE Payment is to prevent a lifting of the automatic stay. Once the stay has been lifted, any further SARE Payment is ineffectual.

20. Because there is no case law on point in regard to tendering of SARE Payments after the reimposition of the automatic stay, Cascadia is requesting that the Court make a determination as to the extent of Cascadia's obligations under 11 U.S.C. § 362(d)(3)(B). Based

EMERGENCY MOTION FOR THE REIMPOSITION OF THE
AUTOMATIC STAY… - 6

SEADOCS:424820.1
552640.0002

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

on the foregoing, it is Cascadia's position that SARE Payments are only required when the automatic stay is in place or back in place, thus, once the stay is reimposed, SARE Payments will again become due on a going forward basis. If the stay is reimposed, Cascadia will be responsible for SARE Payments going forward. Cascadia, will however, be responsible for the full monthly payment for October and any subsequent month that the automatic stay is in place.

## IV. CONCLUSION

Based on the foregoing, Cascadia respectfully requests the Court reimpose the automatic stay. A copy of the Proposed Order Reimposing the Automoatic Stay and Determining Debtor's Obligations under 11 U.S.C. § 362(d)(3)(B)(SARE) is attached as Exhibit A.

DATED this 21st day of September, 2010.

MILLER NASH LLP

*/s/ Geoffrey Groshong*
Geoffrey Groshong, WSB No. 6124
Daniel A. Brown, WSB No. 22028
Danielle M. Cross, WSB No. 41792

Attorneys for Debtor
The Cascadia Project LLC

EMERGENCY MOTION FOR THE REIMPOSITION OF THE AUTOMATIC STAY… - 7

SEADOCS:424820.1
552640.0002

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352