Entered on Docket May 26, 2011

KAREN A. OVERSTREET
Bankruptcy Judge
United States Courthouse
700 Stewart St., Suite 6310
Seattle, WA  98101
206-370-5330

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re                              )
                                   )    Chapter 7
CASCADIA PROJECT LLC,              )
                                   )    Bankruptcy No. 09-20780
                                   )
        Debtor.                    )
                                   )    **MEMORANDUM DECISION**
                                   )
_____)    **NOT FOR PUBLICATION**

This matter came before the Court on March 18, 2011, on the Final Application for Compensation and Reimbursement of Expenses (the "Application"), filed by Obsidian Finance Group, LLC ("Obsidian"), the financial advisor to the debtor, Cascadia Project LLC (the "Debtor").  Dkt. 634.  HomeStreet Bank ("HomeStreet"), the Debtor's largest secured creditor, filed the only objection to the Application.[1]  At a hearing on the Application on March 18, 2011, the Court invited the parties to file additional pleadings addressing whether Obsidian had a conflict of interest which might mandate disallowance of all or part of the fees sought.  Obsidian and HomeStreet filed supplemental briefs and declarations, which the Court has considered, in addition to the initial pleadings filed in support of and in opposition to the Application.  *See* Dkt.

---

[1] At the hearing, the Court made an orally ruled that HomeStreet has standing to oppose the Application.  The oral ruling is incorporated in this Memorandum Decision by this reference.

MEMORANDUM DECISION - 1

655, 656, 657, 658.

For the following reasons, the Court finds that Obsidian had a conflict of interest as of May 17, 2010, when it agreed to acquire an ownership interest in the Debtor, and that its fees and costs incurred on and after that date should be denied.

## I. FACTS

The Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code[2] on October 15, 2009. On December 4, 2009, the Debtor submitted an application for authorization to employ Obsidian as its financial advisor. As set forth in the Application and the Declaration of Kevin Padrick, senior principal and co-founder of Obsidian, Obsidian did not hold an adverse interest to the estate, and it was considered a disinterested person under Bankruptcy Code § 327(a).[3] Application to Employ, Dkt. 91; and Declaration of Kevin Padrick, Dkt. 92. On January 28, 2010, the Court entered an order approving the employment of Obsidian as a financial advisor. Dkt. 188. Pursuant to the order, Obsidian was appointed "to perform all services necessary to effectively assist and advise the Debtor with regard to financial issues and other matters set forth in the Application or as may otherwise become necessary." *Id*. at ¶2. Further, the

---

[2] Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§101 *et seq*. and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq*.

[3] The Application to Employ disclosed that Kevin Padrick was a former partner of Miller Nash, counsel representing the Debtor. Thus, counsel for the Official Committee of Unsecured Creditors (the "Committee") in this case has filed various pleadings, including the Application, on behalf of Obsidian.

MEMORANDUM DECISION - 2

order approved an alternative form of compensation, whereby Obsidian would discount its hourly rates charged to the bankruptcy estate by 50% in exchange for a success fee to be paid after confirmation that would be equal to three times the total amount of its 50% hourly rate reduction. *Id*.

On February 9, 2010, the Committee filed a Supplemental Declaration of Kevin Padrick, whereby it was disclosed that Obsidian engaged the law firm of Ball Janik LLP, counsel for HomeStreet, the major secured creditor in the case, as its counsel on matters unrelated to the bankruptcy case. First Supplemental Declaration of Kevin Padrick, Dkt. 201. On March 23, 2010, the Court entered an order awarding Obsidian compensation for services in the amount of $131,774 and reimbursement of expenses in the amount of $4,837.79. Dkt. 240. Of the amount awarded, $66,399.24 remains unpaid.

The Debtor filed its Chapter 11 Plan of Reorganization (the "Plan") and Disclosure Statement on May 31, 2010. Dkt. 333, 334. Attached to the Plan was a Letter of Intent for Acquisition and Funding of the Cascadia Project LLC ("LOI") dated May 28, 2010, among TPG Opportunities Partners, L.P. ("TPG"), Yarrow Bay Holdings ("Yarrow Bay"), and Obsidian. According to the LOI, TPG, Yarrow Bay, and Obsidian were to acquire 100% of the equity interest in the Debtor and to jointly contribute up to $55 million to fund the Plan. Obsidian's proposed contribution under the LOI was 2% of the total investment, equating to $1.1 million. Additionally, the acquisition of the Debtor's equity interest was to be accomplished through a newly formed limited liability company owned by the three investors. Section 3 of the LOI provided that the reorganized

MEMORANDUM DECISION - 3

debtor would be managed by a newly created servicing entity owned 60% by Yarrow Bay and 40% by Obsidian (the "Servicing Entity"). The Servicing Entity would provide day-to-day servicing of the project in exchange for a monthly fee of $75,000 plus bonuses. Dkt. 333, Exhibit 1.[4]

On June 14, 2010, HomeStreet filed a Motion to Disqualify Obsidian as the Debtor's financial advisor on the ground that Obsidian's status as an investor in the reorganized debtor under the Plan created a conflict of interest rendering Obsidian disinterested under Section 327(a) (the "Motion to Disqualify"). Dkt. 400. Three days later, on June 17, 2010, Mr. Padrick filed a Second Supplemental Declaration regarding Disclosure of Connections by Obsidian, disclosing Obsidian's role under the LOI. Dkt. 426. Specifically, the declaration disclosed that Obsidian would be an investor under the Plan and be a servicer for the ongoing operations of the reorganized debtor. *Id*.

At the evidentiary hearing on HomeStreet's Motion for Relief from Stay (the "Evidentiary Hearing"), held June 22 through 24 of 2010, Mr. Padrick testified extensively. Over hours of questioning, he took the Court and the parties through the complicated and detailed business model constructed by Obsidian for the development of the Cascadia planned community. He testified that Cascadia's 4,400 acre parcel would ultimately be developed into one of the largest employment-based, planned communities in

---

[4] On June 19, 2010, the Debtor filed its First Amended Chapter 11 Plan of Reorganization, attached to which was the LOI. Dkt. 445. The amended plan was in substance no different than the Plan as the terms related to the transactions at issue here, accordingly, the Court will refer hereinafter only to the Plan.

MEMORANDUM DECISION - 4

the State of Washington and that it would include the development of residential, commercial, business and educational properties in conjunction with the development of an adjacent property as a golf course and resort community consisting of 514 acres. Mr. Padrick testified that the project contemplated as many as 40,000 people living and/or working in the Cascadia community. The development model was dependent upon the funding to be provided by the investors, including Obsidian, under the LOI.

On the first day of the Evidentiary Hearing, Mr. Padrick testified that at a meeting with representatives of TPG on May 17, 2010, TPG made it a condition of any investment in the Debtor by TPG that Obsidian also participate as an investor. Prior to this meeting, according to Mr. Padrick's testimony, Obsidian had no intention to act as an investor under the Plan. Mr. Padrick further testified that pursuant to the LOI and the Plan, if confirmed and performed, Obsidian would realize approximately $28 million on its $1.1 million investment in the reorganized debtor. Mr. Padrick testified that after the May 17, 2010 meeting with TPG, he consulted with the Debtor's counsel and the Committee's counsel before committing Obsidian to be an additional investor in the Debtor and owner of the Servicing Entity under the LOI.

At the conclusion of the Evidentiary Hearing, the Court found that the Debtor had proved it had a reasonable possibility of confirming the Plan within a reasonable time and that HomeStreet's motion for relief from stay should be denied. The Court's conclusion required an examination of the feasibility of Obsidian's development model and was based largely on the substantial testimony provided by Mr. Padrick in support of the Plan and the

MEMORANDUM DECISION - 5

development model. The Court's decision to deny relief from stay even though the LOI was contingent at the time of the Evidentiary Hearing was based almost entirely on Mr. Padrick's opinion that there was a "70% likelihood" that TPG would enter into binding agreements incorporating the then contingent terms of the LOI.

The hearing on HomeStreet's objection to Obsidian's continued service as the Debtor's financial advisor was not scheduled to be heard until after the conclusion of the Evidentiary Hearing, which concluded on June 24, 2010, with the Court's oral ruling. Accordingly, the Court made no findings in connection with the Evidentiary Hearing concerning whether a conflict had arisen with respect to Obsidian's service as the Debtor's financial advisor. Unfortunately for the Debtor, TPG ultimately declined to enter into binding agreements with the Debtor, Yarrow Bay and Obsidian, and HomeStreet renewed its motion for relief from stay on August 1, 2010. Dkt. 528. According to the Debtor's response to HomeStreet's renewed motion, TPG was willing to commit to only 50% of its proposed investment under the LOI, which was $49.5 million (90% of the total of $55 million). The Debtor's response, which was supported by the Declaration of Kevin Padrick, requested the Court to grant Obsidian additional time to find another investor to make up the difference in funding. Dkt. 540. By the time of the hearing on HomeStreet's renewed motion for relief from stay on August 6, 2010, the Debtor had not secured an additional investor and the Court granted HomeStreet's motion that same day. Dkt. 545.

At the time HomeStreet filed the Motion to Disqualify, it also filed a motion to shorten the time for a hearing, requesting that the motion be heard on June 16, 2010, before the commencement of

MEMORANDUM DECISION - 6

the Evidentiary Hearing. Dkt. 396. The Debtor objected to shortening the time for hearing on the Motion to Disqualify (Dkt. 406), and the Court conducted a special hearing on June 16, 2010. After considering the arguments of all parties, the Court declined to shorten the time for hearing on the Motion to Disqualify and instead ordered that the hearing be continued to July 23, 2010. The Court indicated that if Obsidian, which had just obtained separate counsel, wanted the Motion to Disqualify to be heard before July 23, Mr. Padrick could agree to that and set it on the calendar with the concurrence of HomeStreet.

No request to hear the Motion to Disqualify prior to July 23, 2010, was ever made by Obsidian. Instead, at a status conference held on July 16, 2010, in anticipation of a settlement between HomeStreet and the Debtor (with funding by TPG), the parties asked to continue the hearing on the Motion to Disqualify to August 27, 2010. After TPG declined to go forward again and the Court granted HomeStreet's motion for relief from stay on August 6, 2010, however, HomeStreet struck the hearing on the Motion to Disqualify.

The Application seeks compensation for services and reimbursement of fees and expenses incurred by Obsidian as the Debtor's financial advisor from February 1, 2010 through September 22, 2010 in the amount of $673,174.26. HomeStreet objected to the Application and argues that Obsidian acquired an interest adverse to the Debtor's estate mandating the Court's disallowance of all fees and costs requested.

## II. DISCUSSION

Bankruptcy Code §330(a), in relevant part, provides that the court may award a professional person employed under Section 327 or

MEMORANDUM DECISION - 7

Section 1103 reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses incurred. Section 328(c) permits the court to deny allowance of compensation for services and reimbursement of expenses of a professional person if, at any time during the professional's employment, they are not a "disinterested person," or represent or hold an interest adverse to the interest of the estate with respect to the matter on which they have been employed.

Under §327(a), the court-appointed professional must be "disinterested," and must not represent or hold any interest adverse to the estate. The term "disinterested" is defined under Section 101(14) to mean a person who "is not a creditor, an equity security holder, or an insider" and who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." In the Ninth Circuit, the test for determining whether a professional has an interest that is materially adverse to the estate so as to not qualify as disinterested requires an objective, fact-driven inquiry into the totality of circumstances. *In re AFI Holding, Inc.*, 530 F.3d 832 (9th Cir. 2008). The term "disinterested" is broad enough to disqualify anyone from being employed as a professional who might have the slightest degree of interest or relationship that "would even faintly color the independence and impartial attitude required by the Code." *Id*. at 838, *quoting In re AFI Holding, Inc.*, 355 B.R. 139 (9th Cir. BAP 2006). The phrase "hold or represent an interest adverse to the estate" is not defined in the Code, but has

MEMORANDUM DECISION - 8

been interpreted by courts to mean (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant, or (2) to possess a predisposition under circumstances that render such a bias against the estate. *In re Crivello*, 134 F.3d 831, 835 (7th Cir.1998). The statutory requirements of disinterestedness and lack of adverse interest serve the important policy of ensuring that all professionals appointed pursuant to the Code serve the estate with undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities. *Id*. at 835-36.

In this case, Obsidian was employed as the Debtor's financial advisor, and the services to be provided were broad. It was contemplated that Obsidian would provide not only financial advice, but would also develop strategies for reorganization and work with creditors and potential investors to raise equity to fund the plan of reorganization. Because the Debtor is a single asset real estate debtor, it was under immense pressure to propose a plan within an expedited period of time. The aggressive, but entirely lawful, actions by HomeStreet as the Debtor's major secured creditor to enforce its rights limited the time and ability of the Debtor to develop reorganization alternatives. Obsidian embarked upon the preparation of a complicated and detailed business model for development of the project that could be marketed to potential investors. Having constructed that model, Obsidian was intimately familiar with the risks associated with any investment in the reorganized debtor. The investment Obsidian ultimately agreed to

MEMORANDUM DECISION - 9

make under the LOI was substantial.

Obsidian contends that its agreement to invest in the reorganized debtor did not create an interest materially adverse to the estate and thereafter it could remain disinterested, despite it's new role as an investor, because it agreed to subordinate any return on its investment or profit to the full payment of all creditors of the estate. It argues that even as an investor, Obsidian's interests were fully aligned with the interests of the estate, each with the goal of maximizing the return to creditors. HomeStreet counters that Obsidian's assumption of the role of buyer of estate assets created a direct conflict of interest, and its agreement to subordinate payment of its financial return to the payment of creditors is irrelevant.

The Court agrees with HomeStreet that under the circumstances of this case, Obsidian's dual role as investor and financial advisor went beyond a mere hypothetical conflict and instead gave rise to an actual and material conflict with the interests of the estate. That conflict was not eliminated or even ameliorated by Obsidian's agreement to subordinate the return on its investment to payment to creditors. As the Debtor's financial advisor, Obsidian could realize its success fee under its employment agreement only if a reorganization plan was confirmed. If the Plan had been confirmed, that success fee would have approximated $2 million. If the Plan had been confirmed and was fully performed, Obsidian would realize, in addition to its success fee and its administrative expense claim for compensation and expenses, an estimated $28 million return on its equity investment in the Debtor. Once tied to TPG under the LOI, Obsidian was bound to pursue that option to

MEMORANDUM DECISION - 10

the exclusion of other options that might have been available to the Debtor. Mr. Padrick testified at the Evidentiary Hearing and argues here that TPG was the Debtor's only option. Given Obsidian's conflict, however, the Court finds Obsidian's "independence and impartial attitude required by the Code" more than faintly compromised on and after May 17. 2010.

The cases cited by Obsidian in support of its contention that the seller-buyer role does not give rise to an actual conflict under the facts of this case are not persuasive. Instead, the Court is persuaded by the analysis of the Fifth Circuit Court of Appeals in *In re West Delta Oil Co., Inc.*, 432 F.3d 347 (5th Cir. 2005). In that case, the court held that an attorney who represented the debtor could not seek to acquire a financial interest in the entity proposing to acquire the debtor. Under the facts of that case, unlike this case, the attorney never signed an agreement to acquire that interest. The court there noted "[w]hile they [the professionals] failed in their effort to acquire an interest in West Delta [the debtor], this failure was not for lack of effort" and it concluded that the bankruptcy court's determination that the professionals' interest was contingent ignored "the reality that both [professionals] testified to taking affirmative steps in an effort to acquire a valuable financial stake in their client. The ultimate success of these efforts is irrelevant-the active pursuit of success is sufficient to give rise to an adverse interest here." *Id*. at 357.

In this case, not only did Obsidian sign the LOI obligating it to acquire an ownership interest in the reorganized debtor, it was at the same time negotiating the terms of the arrangement between

MEMORANDUM DECISION - 11

the Debtor and TPG.  From May 17, 2010, when Obsidian agreed to become an investor, until May 31, 2010, when the Debtor filed the Plan and disclosed the interest of Obsidian in the LOI, Obsidian was negotiating the return on its investment, its share of the servicing fee, and its interest in the Servicing Entity, all on *its own behalf*.  This clearly gave rise to a conflict with regard to its simultaneous negotiation of the terms of the LOI as it would affect the Debtor and the creditors of the estate.  Evidence of actual prejudice to the estate is irrelevant, because it is difficult to prove and because the problem is not just "actual evil results" but also the "tendency to evil." *Woods v. City of Nat'l Bank & Trust Co.*, 312 U.S. 262, 268 (1941).  Under the facts of this case, given Obsidian's conflict, the Court must deny compensation to Obsidian for the period during which it had an actual conflict of interest.

That counsel for the Debtor and for the Committee acquiesced in Obsidian's dual rule does not negate the requirements of Sections 327(a), 328(c), and 101(14).  Similarly, the fact that the Court did not intervene *sua sponte* and issue an order to preclude further work by Obsidian does not save Obsidian from denial of compensation.  Obsidian and Mr. Padrick are sophisticated parties who specialize in transactions involving distressed companies and properties.  They are fully aware of the statutory requirements of the Code and as far as the Court is concerned are fully capable of determining when they want to abandon their role as an estate advisor in favor of a potentially lucrative role as an estate investor.  If Obsidian desired a ruling from the Court it could have objected to the Motion to Disqualify and brought the matter to

MEMORANDUM DECISION - 12

the Court for hearing.  Instead, Obsidian either acquiesced in or encouraged HomeStreet to withdraw the motion after the Court granted HomeStreet's motion for relief from stay.

Obsidian contends that its full disclosure of its involvement in the Plan somehow rids it of the conflict of interest.  Rule 2014(a) requires any professional applying for employment to set forth "to the best of the applicant's knowledge" all known connections of the applicant with the "debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  While this provision does not explicitly require ongoing disclosure, case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) a professional is under a duty to promptly notify the court if any potential for conflict arises. *See In re Metropolitan Environmental, Inc.*, 293 B.R. 871, 887 (Bankr.N.D.Ohio 2003). *See also In re West Delta Oil Co., Inc.*, *supra*.  A professional's failure to fully disclose relevant information as required under the Bankruptcy Code and Rules may result in denial of all requested compensation for a professional fee applicant. *In re Park-Helena Corp.*, 63 F.3d 877, 881 (9th Cir. 1995).

In this case, Obsidian failed to disclose it's conflict under Rule 2014 immediately when it arose on May 17, 2010.  Instead, the conflict was not disclosed until after HomeStreet filed its Motion to Disqualify on June 14, 2010.  By that time, Obsidian had been acting simultaneously as the estate's financial advisor and as a proposed investor in the Debtor for a month and the path to the

MEMORANDUM DECISION - 13

Debtor's reorganization was fixed with TPG for purposes of the upcoming Evidentiary Hearing. Accordingly, the Court finds that Obsidian's belated disclosure does not absolve it of the consequences of the conflict of interest.

The Court has considerable discretion in fashioning a remedy under the circumstances of this case, including the denial of all fees and costs requested by Obsidian. *See In re Ponce Marine Farm, Inc.*, 259 B.R. 484 (D. Puerto Rico 2001). The Court finds, however, based upon the uncontroverted testimony of Mr. Padrick, that prior to May 17, 2010, Obsidian was a disinterested professional acting in the interest of the estate. Thus, the Court concludes that denial of all fees and costs incurred by Obsidian is not warranted.

**CONCLUSION**

For the foregoing reasons, the Court finds that as of May 17, 2010, Obsidian had an actual conflict of interest with the interests of the estate and that compensation and expenses incurred on and after that date must be denied. Obsidian shall calculate the amount of the fees to be disallowed pursuant to this Memorandum Decision and submit an order consistent with this Memorandum Decision.

//END OF MEMORANDUM DECISION//

*Karen A. Overstreet*
United States Bankruptcy Judge
(Dated as of Entered on Docket date above)

MEMORANDUM DECISION - 14